NORRIS, Judge.
Plaintiff Ruston State Bank and its mineral lessee filed a petitory action claiming ownership of a tract of land in Jackson Parish. Defendants were Crystal Oil Company, lessee of the tract by virtue of mineral leases from the adverse claimants, and the unopened successions of the three original adverse claimants. Crystal Oil excepted on the grounds that its individual mineral lessors were indispensable parties. The court-appointed representatives of the unopened successions also excepted on the grounds that the succession administrators were indispensable parties. The trial court sustained all these exceptions and gave plaintiffs thirty days to amend by joining the mineral lessors and administrators. When plaintiffs failed to do so, the trial court dismissed the suit without prejudice. Plaintiffs appealed. For the reasons expressed, we affirm.
The issues presented are whether a plaintiff, seeking a judgment of ownership of an immovable, an accounting and cancellation of certain mineral leases, may sue the court-appointed attorney of the lessors’ ancestors in title, or whether he must join (1) the lessors themselves or (2) the ancestors’ succession representatives. Appellants bring three assignments of error:
(1) The ruling of the trial court fails to recognize plaintiffs’ right to sue unopened successions and have attorneys appointed for such successions under LSA-C.C.P. art. 5091(2)(a);
(2) The ruling of the trial court fails to recognize that plaintiffs’ action is a proceeding in rem; and
(3) The ruling of the trial court misapplies LSA-C.C.P. art. 3121, which provides for the appointment of a succession administrator in succession proceedings.
FACTS
Plaintiffs trace their title to one Mary Wyatt, who acquired the tract in the early 1900s. Ruston State Bank allegedly purchased the tract from her by a deed dated August 31, 1926, properly recorded. There was no further activity in the Bank’s chain until April 2, 1982, when the Bank granted a mineral lease, properly recorded, to M & 0 Oil and Gas Corporation. The latter assigned its lease to plaintiff M & 0 Oil and Gas (a partnership) in February, 1983.
Defendants also trace their title to Mary Wyatt. She was survived by ten children, all issue of her first marriage; there was no issue of her second marriage, and her second husband predeceased her. R.p. 71. Mary Wyatt herself died in April, 1936. No succession proceedings of any kind were initiated; her heirs never formally accepted her succession. Some years later, however, two of Mary Wyatt’s children, Minnie Timmons and William Wyatt, conveyed their interest in the tract to Jesse and Isabella Calloway. These sales were by separate acts, properly recorded. In her deed, Minnie Timmons represented herself as the heir of Mary Wyatt. At the time of these sales, in 1956, there were three other surviving children and one grandchild who represented a predeceased son; the other four children had died earlier, without issue. The vendee Isabella Cal-loway died in 1964, leaving eight surviving children and seven grandchildren through a predeceased daughter. The vendee Jesse Calloway was survived by two children of his own, but the exact date of his death is *862 not given in the record. As with Mary Wyatt, no succession proceedings were ever initiated for the Calloways and their heirs never formally accepted. Defendant Crystal Oil entered the scene in the early 1980s when it sought to acquire mineral rights to the tract. It executed a total of thirty-one mineral leases or royalty deeds, properly recorded, with the heirs of Mary Wyatt, Isabella Calloway and Jesse Callo-way. Crystal then secured Office of Conservation Orders and established drilling units on the tract in August and December, 1982. One of these wells is currently in production.
Asserting the strength of the 1926 deed, plaintiffs filed the instant suit on October 17, 1983, requesting appointment of attorneys to represent the unopened successions, a decree of plaintiffs’ ownership, erasure of defendants’ leases and mineral deeds, and an accounting of all proceeds of unit production.
ASSIGNMENTS NOS. 1 & 2
The substance of these related assignments of error, urged at trial, in brief and in argument, is that the method appellants chose for enforcing their petitory and related claims was proper under LSA-C.C.P. art. 5091, which provides:
The court shall appoint an attorney at law to represent the defendant, on the petition or ex parte written motion of the plaintiff, when:
(1) It has jurisdiction over the person or property of the defendant, or over the status involved, and the defendant is: (a) a nonresident or absentee who has not been served with process, either personally or through an agent for the service of process, and who has made no general appearance; or (b) an unemancipated minor or mental incompetent who has no legal representative, and who may be sued through an attorney at law appointed by the court to represent him; or
(2) The action or proceeding is in rem and: (a) the defendant is dead, no succession representative has been appointed, and his heirs and legatees have not been sent into possession judicially; (b) the defendant is a corporation or partnership on which process cannot be served for any reason; or (c) the defendant’s property is under the administration of a legal representative, but the latter has died, resigned, or been removed from office and no successor thereof has qualified, or has left the state permanently without appointing someone to represent him.
All proceedings against such a defendant shall be conducted contradictorily against the attorney at law appointed by the court to represent him.
The improper designation of the attorney appointed by the court to represent such a defendant as curator ad hoc, tutor ad hoc, special tutor, or any other title, does not affect the validity of the proceeding. [Emphasis added.]
Ordinarily, suits must be brought against the true parties affected. Nevertheless, appellants contend that they may sue the court-appointed attorney of an unopened succession under subsection (2)(a) of article 5091. This subsection, they claim, is tailor-made to the situation here, where the action is in rem (to enforce a real right), there is a large number of heirs or legatees not yet sent into judicial possession, and no administrator has been appointed. Thus the article should entitle a plaintiff to pursue his action without the necessity of waiting for succession proceedings to name the heirs and distribute the estate. By appellants’ reasoning, the article is designed to assist a plaintiff in a situation like this.
In addition to the technical propriety of applying article 5091 to this case, appellants argue there are sound policy considerations served by the procedure. Our jurisprudence clearly holds that an effective judgment cannot be had against a potential defendant who was not joined in the suit. See LSA-C.C.P. art. 641; Gajan v. Patout et Burguieres, 135 La. 156, 65 So. 17 *863 (1914). The law requires a full disposition of the case, they claim, in order to avoid later duplicative proceedings against unknown heirs.
Appellants’ argument is intriguing in that it would provide a relatively easy means for a plaintiff to assert a right against heirs of a long-dead defendant, through the expedient of appointing a 5091 attorney to represent his unopened succession.
We do not agree, however, that article 5091 was designed to operate under these circumstances. In the first place, subsection (2)(a) applies by its own terms to in rem proceedings only. Appellants have not given us any help in defining an in rem proceeding, nor in citing jurisprudence on point, yet they urge their suit is perfectly in rem, nothing more than in rem. According to LSA-C.C.P. art. 8, in rem jurisdiction is the power of a Louisiana court to enforce a right in or against property having a situs in the state, when the property is claimed or owned by a non-resident not subject personally to the jurisdiction of the court. Professor McMahon, in his comments on the new Code of Civil Procedure, said, “An executory proceeding to enforce a mortgage or privilege on property having situs in Louisiana is a proceeding in rem, over which a court of this state has jurisdiction.” See “Summary of Procedural Changes in Chapter 2,” 6 West’s LSA Civil Procedure, 325. The instant suit prays for a judgment that would wrest ownership from the defendant, cancel mineral leases and require an accounting of production proceeds. We do not think that a suit for an accounting or money judgment is truly in rem. See Spencer v. Collins, 338 So.2d 148 (La.App. 2d Cir.1976).
Furthermore, a plain reading of the whole article shows that 5091 is designed to facilitate service when the defendant is out of service’s reach. We feel that this sort of unavailability is not present in the instant case. The property of Mary Wyatt and of the Calloways passed, by operation of law, to their descendents. LSA-C.C. arts. 880, 888; Succ. of Coco, 185 La. 901,
171 So. 70 (1936); Tulane University of La. v. Board of Assessors, 115 La. 1025, 40 So. 445 (1905); Dion v. Knap, 230 So.2d 842 (La.App. 1st Cir.1970); cf. Succ. of Lewis, 440 So.2d 899 (La.App. 2d Cir.1983), writ denied 443 So.2d 1119 (La.1984). These heirs tacitly accepted the successions when they later granted mineral leases on the tract. LSA-C.C. art. 988. These considerations are very general but they illustrate the usual function of our law so plainly that there can be no real doubt about who succeeded to the property here. Thus the instant situation is different from those contemplated by article 5091, where there is no other adequate method of reaching the affected parties.
Finally, the legislative history of article 5091 undermines plaintiff's argument. The provisions of article 5091(2) were originally contained in LSA-R.S. 13:3411 and 3412, which were repealed in 1960 and replaced by LSA-C.C.P. arts. 2672 through 2674. These articles provide for executory actions against heirs, administrators and unrepresented defendants. Subsection (2) was then added in 1964, to provide the same options for in rem suits by ordinary proceedings. See LSA-C.C.P. art. 5091, Revision comment (b) (1964). We will not infer that the 1964 amendment created the greater right of exempting plaintiffs of the duty to sue and serve defendants whose identities and domiciles are known. In sum, there is no justification for applying article 5091. to the instant case.
We note parenthetically that we have not been able to find any cases directly on this point, but that in the parallel situation of a petitory suit to settle a tax title, the jurisprudence holds that heirs must be joined in the suit if their identity and whereabouts are known. See Garry v. Zor Inc., 181 So.2d 828 (La.App. 4th Cir.1966); Wood v. Rovira, 372 So.2d 762 (La.App. 4th Cir. 1979); cf. Warner v. Garrett, 268 So.2d 92 (La.App. 1st Cir.1972), writ denied 263 La. 987, 270 So.2d 123 (1972). The cases reach this conclusion in spite of a special statute that would allow for appointment of a curator ad hoc under circumstances similar to *864 those in article 5091. LSA-R.S. 47:2228.-1C.
ASSIGNMENT OF ERROR NO. 3
This leads us directly to appellants’ third assignment, the claim that the trial court improperly required joinder of the administrators to be appointed under LSA-C.C.P. art. 3121. Since the issue of joinder was posed differently by different defendants, we will consider them separately.
First, defendant Crystal Oil contended that appellants should have joined the individual landowners. The trial court was correct in maintaining this exception. See LSA-C.C.P. arts. 3651, 641; LeSage v. Union Producing Co., 249 La. 42, 184 So.2d 727 (1966); Terrett v. Brossett, 34 So.2d 671 (La.App. 2d Cir.1948); Humble Oil & Refg. Co. v. Jones, 241 La. 661, 130 So.2d 408 (1961). These cases hold that the lessors’ interests are “deeply intertwined with the subject matter of the suit and are so affected by a judgment that a complete and equitable adjudication cannot be made unless they are joined.” LeSage, 184 So.2d at 732. Thus they are indispensable, or at least necessary, parties. LSA-C.C.P. arts. 641, 642.[1]
Second, the defendant successions contended that an administrator should have been appointed under LSA-C.C.P. art. 3121 which provides:
When no qualified person has petitioned for appointment as administrator of a vacant succession within three months of the death of the deceased, the court may appoint an attorney at law as administrator thereof and set his compensation. * * *
The trial court maintained this exception. This was incorrect because the successions are not “vacant” under LSA-C.C. art. 1095:
A succession is called vacant when no one claims it, or when all the heirs are unknown, or when all the known heirs to it have renounced it.
We pretermit further discussion of this exception because the trial court correctly dismissed the suit under Crystal Oil’s exception. A reversal of the article 3121 issue would not change the result.[2]
There is one final issue permeating appellants’ argument: policy considerations. We agree they apply in this case, but we disagree about which policies must be served. Appellants correctly assert that courts must promote methods and procedures that foster judicial economy and prevent repetitive relitigation. There are, however, the larger considerations of promoting timely litigation, and of the stability of titles. Appellants have waited fifty-seven years to assert a claim through an instrument whose validity was seriously questioned. R.p. 22. If the instant action had been brought sooner, appellants could have avoided the kaleidoscope of heirs and issues that seem so insurmountable today. Appellants may have a valid title claim, and they are still free to pursue it, but the law would be unfair to permit them to cast a cloud on these landowners’ rights at this late date without requiring full compliance with the procedural articles on joinder and successions. This is all the more true where the procedural expedient chosen by appellants is not applicable, and the names and whereabouts of the heirs are known. Under the circumstances, we see no justice in stretching the bounds of article 5091 as appellants would have us do.
For these reasons, we affirm the judgment of the trial court. Appellants’ suit is *865 dismissed without prejudice; costs are assessed to appellants.
AFFIRMED.

. Even if the lessors were only necessary parties, their joinder was required because Crystal Oil timely objected to their nonjoinder. LSA-C. C.P. art. 642, 2d paragraph; LeSage v. Union Producing Co., supra 184 So.2d at 732.

. The trial court was probably guided in granting the article 3121 exceptions, by the general principal that the administrator is “always” the property party in a suit against a succession. LSA-C.C.P. arts. 734, 3249. (A creditor may even provoke proceedings to appoint an administrator under LSA-C.C.P. art. 1072.) Though universal, this rule is of no avail when the landowners, and not the successions, should have been sued.