GOTHARD, Judge.
This controversy arose from the sale of an immovable property at private sale by a succession to a third party. From a judgment in favor of the succession, a co-owner who had redeemed the property appealed. The succession answered the appeal. We affirm.
Rosetta Walker Gipson died intestate on November 10, 1970, her husbands Henry Gipson and Jacob Green having predeceased her. The succession was opened in 1973 and an administrator appointed. As Rosetta Walker had no children, the heirs were her brothers and sisters, several of whom predeceased her and were represented by children or grandchildren. In all there were about forty heirs.
Frank Walker had paid the property taxes beginning in 1972, when he redeemed the property after it had been sold for 1970 taxes. He continued paying the taxes and maintaining it until 1981, when he was ordered to remove items from a building on the premises by the attorney for the succession. On May 23, 1982 Walker purchased the property for unpaid 1981 taxes and recorded the tax deed in Jefferson Parish.
Virtually no activity took place in the succession proceedings until 1984, when the third administrator was appointed the first two having resigned because of age and ill health. In 1985 Sandra Walker, the new succession representative, received an offer to purchase the property from a third party. The offer was for $8,000 and was later raised to $10,000. Over the years prior to 1985 Frank Walker had the grass cut and saw to the property’s general maintenance. He expressed an interest in owning the property himself, but when informed of the third party’s $10,000 offer, by his own testimony he responded he could not pay that price. In September, 1985 he filed a proof of claim for monies expended on taxes, on the redemption, and on the maintenance expenses, plus interest. In October the administratrix petitioned for a private sale and on November 20, 1985 the property was sold to Walter Hall, with warranty.
The suit against Frank Walker filed March 21, 1986, captioned “Petition for Declaratory Judgment, Specific Performance, and Redemption of Property and Nullity of Tax Sale”, arose from Walker’s refusal to convey his rights to the property back to the succession, which refusal resulted in a cloud on the title. The suit sought a judgment nullifying the tax sale and ordering Walker to convey his rights, title, and interest in and to the property to the succession.
*909 Trial was held and judgment was signed on May 1, 1987. The trial judge held that because mandatory legal notice to the property owners (the heirs) prior to adjudication by tax sale was insufficient, the tax sale to Frank Walker was null and void. He further decreed that the sale of the property by the administratrix was valid and binding. He ordered that the succession pay Frank Walker $2,616.30 for his payment of taxes, interest, expenses in connection with succession property, and costs of the tax sale of 1982. Additionally, the succession was cast for court costs.
The issues raised by the appellant, Walker, all relate to the validity or not of the tax sale: 1) whether the trial judge erroneously changed his position of disallowing testimony attacking the tax sale by requesting post-trial memoranda on validity of the sale, thereby prejudicing the appellant’s ease; 2) whether he was in error in not recognizing the presumption of validity of tax sales; and 3) whether the succession representative was estopped from attacking the sale, under the doctrine of equitable estoppel.
The succession, in answering the appeal, raised four issues, three of which were to be considered only if this court should find the trial court in error in annulling the tax sale. As we find the judgment of the trial court to be correct, we pretermit discussion of these issues. However, we shall consider the remaining issue of appellees, whether the court abused its discretion in casting them for court costs.
The Constitution of 1974, article 7, Sec. 25 (and its predecessor) provides mandatory notice of tax delinquency, which must be given to a tax debtor before his property may be sold for taxes. Childress v. Johnson, 387 So.2d 1217 (La.App. 1st Cir.1980), writ denied, 393 So.2d 744 (La.1980).
LSA-R.S. 47:2180 clearly sets out the mandatory procedure to be followed by the tax collector in notifying the record owners of immovable property of delinquency and, ultimately, of a forthcoming tax sale:
A. On the second day of January each year, or as soon thereafter as possible, the tax collector shall address to each taxpayer who has not paid all the taxes, which have been assessed to him on immovable property, or to the record owner of the property for which the taxes are delinquent, or to the actual owner in the event the record owner is deceased, written or printed notice in the manner provided for herein that his taxes on immovable property must be paid within twenty days after the service or mailing of the notice, or that the property will be sold according to law.
B. The tax collector shall send to each taxpayer by certified mail, with return receipt requested, the notice prescribed herein, provided that in cities containing a population of over fifty thousand persons, the tax collector may either send this notice by certified mail or may make personal or domiciliary service on the taxpayer. In the event the certified notice is returned as being undeliverable by the post office, the tax collector may comply with Article 7 Section 25 of the Constitution of Louisiana and the provisions of this Section by advertising the tax debtor’s property in the advertising required for unknown owners in Subsection C of this Section. After the tax collector shall have completed the service by the notices herein required, either by mail or by personal or domiciliary service, he shall make out a proces verbal stating therein the names of delinquents so notified, their post office addresses, a brief description of the property, the amount of taxes due and how the service of notice was made. Such proces verbal shall be signed officially by him in the presence of two witnesses and filed, in the parishes other than the parish of Orleans, in the office of the clerk of court for recording and preservation....
Although his proffered testimony is conflicting, Andrew LeBlanc, director of property tax collection for the Jefferson Parish Tax Collector, stated that the only notices of the delinquency were addressed to Henry Gipson and wife. Copies of the final notice, addressed to the two decedents at 6128 West Bank Expressway, Marrero, and *910 of the sheriffs sale, which referred to that notice and to newspaper advertisements, were introduced into evidence.
The law as to validity of notice to a deceased person is summarized in Blythe v. Zor, Inc., 148 So.2d 832 (La.App. 4th Cir.1963), writ denied, 150 So.2d 768 (La.1963), as follows at 833:
Notice of delinquency as to a deceased person, unless served on his heirs or legal representatives, is irregular; and a sale made pursuant to notice addressed to the deceased, in whose name the property is assessed, is void. Butler v. D’Antonio, 231 La. 275, 91 So.2d 345; Board of Commissioners, etc. v. P.M. Realty Company, La.App., 146 So.2d 21; Scheller v. Goode, La.App., 69 So.2d 96; Doll v. Montgomery, La.App., 58 So.2d 573; Fountain v. Kirby Lumber Corporation, La.App., 199 So. 603; 27 T.L.Rev. 128.
Documents filed with the appellant’s proof of claim indicate that beginning with 1973, all tax notices were mailed to Henry Gipson and Wife at 6128 West Bank Expressway, which is Frank Walker’s residence. Frank Walker argues that all the heirs received notice of the imminent tax sale in 1982, as he made copies and distributed them to the heirs, and that there was no opposition to his buying the property in his own behalf. The certificate of death and heirship filed in the succession named eleven brothers and sisters as of 1973, of whom some had already died. Walker testified that he gave copies of the final notice to the living siblings, along with the current administratrix and her predecessor. For the heirs who predeceased and left descendants he gave the following notice:
“Q. Did you contact each one of their children?
A. No I contacted the head, the oldest one in the family which was Edward Walker. He’s the oldest in Ed Walker’s family. Charles [Walker] tends to Elijah’s [Walker] business in the family.”
With more than forty heirs this would be inadequate notice, even if the law allowed constructive notice. Further, as the only formal notices were mailed to Walker’s home address, it cannot be said that failure of many of the heirs to receive notice was due to their own fault, as in Securities Mortgage Co., Inc. v. Triplett, 374 So.2d 1226 (La.1979). Accordingly, the sale to Walker was a nullity.
In addition, regardless of his motives and intents, because he was a co-owner, his purchase of the property at the tax sale operated only as a payment of the taxes rather than as a sale and inured to the benefit of all the owners who could assert their rights by paying their pro-rata share of the taxes. White v. White, 233 So.2d 289 (La.App. 1st Cir.1970).
We have reviewed the testimony and record carefully to determine whether or not the appellant was prejudiced by the judge’s request for a post-trial memorandum on the issue of validity of the tax sale, when at the beginning of trial he had disallowed testimony on that issue. We point out first that the judge allowed the tax collector’s testimony regarding notice on proffer. The appellant was allowed to present his own evidence as to the notice he provided to the co-heirs and his intention to buy the property for himself.
The appellant complains of being prohibited from submitting evidence in regard to prescription, which he raised as a “defense” in his answer but did not plead as a formal exception. If the content of an allegation is sufficient the allegation may be considered an exception. La.C.C.P. art. 865. However, Walker did not comply with La.C.C.P. art. 924, Form of Exceptions, which provides that the grounds for the exception must be stated “with particularity”. Our examination of the trial transcript reveals no ruling at all on prescription, as no questions were asked in that regard. Counsel for defendant did ask a question regarding possession, to which Walker replied that he had been in possession from 1973 to 1981. The court disallowed further questions on possession because Walker had not previously asserted adverse possession.
Appellant’s post-trial memorandum reiterates his defense of having copied the notice for other heirs, and emphasizes the fact that all the heirs agreed he should *911 have the property. The fact that the heirs other than himself agreed to sell to a third party belies his allegation of universal agreement. He argued also a defense of laches; however, the cases cited were distinguishable from ours on facts. In one, Bridges v. Trevino, 64 So.2d 528 (La.App. 1st Cir.1953), filed twenty years after the tax sale, the several owners had received formal notice of the tax delinquency. In the other, Harrell v. Harrell, 142 So. 138 (La.1932) there was no attack on proceedings in the tax sale and the court held that thirty-seven years was too long for the plaintiffs to wait to invoke the equitable doctrine of co-ownership.
Only in his appellate brief does the appellant state the grounds of his defense of prescription. He asserts that under La. Const. 1974, art. 7, sec. 25(C) the proceeding to annul has prescribed. That provision reads as follows, in pertinent part:
(C) Annulment. No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes prior to the date of the sale, unless the proceeding to annul is instituted within six months after service of notice of sale. A notice of sale shall not be served until the final day for redemption has ended. It must be served within five years after the date of the recordation of the tax deed if no notice is given.
The sale took place on May 23, 1982. He alleges in brief that notice of the sale was served on the heirs at the end of the three year redemption period. If official notice had indeed been given after three years, then the plaintiffs would have had to file the suit within six months of its service in accordance with the Constitution. Otherwise, the five year limit controlled and the suit was filed timely, on March 21, 1986, less than five years after the tax sale.
In his brief appellant asks this court to remand for testimony on possession and prescription. La.C.C.P. art. 2163 provides that a peremptory exception may be filed in the appellate court, under certain circumstances, as follows:
The appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record.
If the ground for the peremptory exception pleaded in the appellate court is prescription, the plaintiff may demand that the case be remanded to the trial court for trial of the exception.
In the case before us the record does not contain the grounds for the exception. For that reason we overrule the exception. Jenkins v. Tillman, 221 So.2d 895 (La.App. 1st Cir.1969). For the reasons discussed above, we find that the appellant was not prejudiced by the trial judge’s rulings as to testimony and pretermit discussion of other issues except for costs.
The appellee complains that the court abused its discretion in ordering it to pay all costs. Under La.C.C.P. art. 1920, ordinarily costs are assessed to the party cast; however the court may assess all or part against any party, “as it may consider equitable”. Although the judge did not articulate his reasons, he no doubt considered the testimony and made his decision on the basis of fairness. We find no abuse of discretion.
For the reasons assigned above, we affirm the judgment appealed from. Costs of this appeal are to be borne equally by the appellant and appellee.
AFFIRMED.